**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**PNC BANK, NATIONAL**
**ASSOCIATION,**

          **Plaintiff,**

**v.**                               **Case No: 6:13-cv-926-Orl-36DAB**

**SHAN MOTEL CO. and HARBHAJAN**
**MEHTA,**

          **Defendants.**

_____

## <u>ORDER</u>

This cause comes before the Court upon Plaintiff PNC Bank, National Association's ("PNC" or "Plaintiff") Verified Motion for Appointment of Receiver ("Motion") (Doc. 39). Defendant Shan Motel Co. ("Shan Motel") filed an Amended Response in opposition to the Motion (Doc. 61), to which PNC replied (Doc. 67). For the reasons that follow, the Motion will be granted in part.

## I.     BACKGROUND

On June 13, 2013, PNC commenced this action by filing a Verified Complaint in this Court. Doc. 1. Among other things, PNC seeks to foreclose on a mortgage it holds on certain real property in Osceola County, Florida owned by Shan Motel (the "Motel Property"), due to a failure by Shan Motel to pay off its indebtedness under a promissory note secured by the mortgage. Doc. 1 at 13–15. PNC also seeks to foreclose on its security interest in the rents that Shan Motel collects from operating a motel on the Motel Property. *Id.* at 19–21.

PNC's purported right to the rents derives from provisions in the mortgage documents granting PNC a security interest in the rents and other income from the Motel Property, and

allowing PNC to collect such rents and income upon a default by Shan Motel. Doc. 1-1 at 7, 12, 14, 19–20. In addition, the relevant mortgage documents provide, in pertinent part:

> In the event that an action is commenced to foreclose this Mortgage, or to enforce payment of any claim hereunder, the Mortgagee may, at any time, apply to the court having jurisdiction thereof for the appointment of a Receiver. Upon such application, the court shall forthwith appoint a Receiver of said Mortgaged Property in accordance with applicable law. Any Receiver so appointed shall have all the broad and effective functions and powers in anyway entrusted by a court to a Receiver, and such appointment shall be made by the court as an admitted equity and matter of absolute right of the Mortgagee, and without reference to the adequacy or inadequacy of the value of the Mortgaged Property or to the solvency or insolvency of the Borrower or the Mortgagors, or the defendants, and that such rents, profits, income, issues and revenues shall be received and applied by such Receiver according to the lien or equity of the Mortgage and the order appointing the Receiver.

*Id.* at 13–14.

On September 27, 2013, PNC filed the instant Motion. Doc. 39. In the Motion, PNC asks the Court to appoint a receiver for the Motel Property pursuant to Federal Rule of Civil Procedure 66 due to Shan Motel's failure to maintain the property. *Id.* at 1. PNC requests that the receiver be permitted to take possession of the Motel Property, manage and maintain the property, and collect the rents and proceeds from the property during the pendency of this foreclosure action. *Id.* at 8–9. Finally, PNC seeks approval for the receiver to market and sell the Motel Property. *Id.* at 9.

In the Motion, PNC avers that it has obtained an appraisal of the Motel Property, a copy of which it has attached to the Motion (the "Appraisal Report"). Doc. 39 at 2; Doc. 39, Ex. 1. The Appraisal Report concludes that the market value of the Motel Property, as of January 13, 2013, is $1,475,000, which is less than the $1,542,339.44 debt owed by Shan Motel under the relevant loan documents. Doc. 39 at 2; Doc. 39, Ex. 1 at 4. The Appraisal Report states that "the overall condition of the property clearly indicates that typical maintenance practices have not been implemented on the property for some time." Doc. 39, Ex. 1 at 24. The Appraisal Report also

notes a "musty odor" in the motel rooms (supposedly resulting from mold), cracking concrete on the upper floors, a broken and boarded window, and ongoing soffit repair. *Id.*

In addition to the appraisal, PNC obtained a Property Inspection Report on February 5, 2013, a copy of which it has attached to the Motion (the "Inspection Report"). Doc. 39 at 3; Doc. 39, Ex. 2. The Inspection Report indicates that the condition of the Motel Property is "Fair/Poor", and summarizes its findings as follows:

> The rooms range from fair to poor. It should be noted on the attached spreadsheet that rooms listed as rentable are not considered to be good condition. All of the rooms are very dated and worn, and have a general appearance of uncleanliness. The inspection was done in the daylight hours, when insect activity is lower, but there was evidence in many of the rooms that indicated pest infestation, and it is assumed that there would be increased activity at night. There were two rooms with obvious mold growth (Room 205 and 255) along with many rooms that had an overwhelming odor of mold, although no visible signs of mold growth were noted on wall and ceilings. Also noted on the spreadsheet are rooms listed as unrentable due to broken door handles and cracked windows. Several of the rooms were not accessible due to the fact the neither the key card nor the room key would open the door (inspector tried a minimum of five times with the card and key).

Doc. 39, Ex. 2 at 1, 2. The spreadsheet included in the Inspection Report indicated that many of the rooms were "unrentable" due to a variety of issues including broken door handles, broken windows, mold, and pest infestations. *Id.* at 3–10.

Additionally, PNC points to the affidavit of Ketan Vora ("Vora"), a principal of a company providing advisory services in receiverships, who is also PNC's proposed receiver for the Motel Property. Doc. 39 at 5; Doc. 39, Ex. 3 ¶ 3; Doc. 39, Ex. 4. Vora states that he conducted an inspection of the outside of the property, where he observed broken and boarded windows and cracking concrete, which in his opinion "must be addressed to maintain the Motel Property." Doc. 39, Ex. 3 ¶¶ 3–4. He further notes that he has "serious concerns about the number of unseen and unknown maintenance issues that must be addressed to maintain the Motel Property." *Id.* ¶ 4.

In its Amended Response, Shan Motel disputes that the Motel Property is subject to waste or that a receiver is necessary. Doc. 61 ¶ 6. Shan Motel also contends that the expenses of a receiver would outweigh the revenues of the motel and, therefore, increase the amount of indebtedness. *Id.* ¶¶ 6–7. Shan Motel further argues that it would be inappropriate for a receiver to have the authority to market and sell the Motel Property given the pendency of the foreclosure proceedings. *Id.* ¶ 5.

## II. DISCUSSION

Federal law governs the appointment of a receiver by a federal court exercising diversity jurisdiction. *Nat'l P'ship Inv. Corp. v. Nat'l Hous. Dev. Corp.*, 153 F.3d 1289, 1292 (11th Cir. 1998). A district court's appointment of a receiver under Federal Rule of Civil Procedure 66 is "an extraordinary equitable remedy" to be exercised only when there is no adequate remedy at law. *United States v. Bradley*, 644 F.3d 1213, 1310 (11th Cir. 2011). Nonetheless, the decision whether to appoint a receiver rests in the sound judicial discretion of the district court. *Cadence Bank, N.A. v. E. 15th St., Inc.*, No. 8:12-CV-1833-T-17EAJ, 2013 WL 2151743, at *3 (M.D. Fla. May 16, 2013) (citing *Atlantic Trust Co. v. Chapman*, 208 U.S. 360, 377 (1908)).

Factors that courts have considered in determining whether to appoint a receiver include: (1) whether the party seeking the appointment has a valid claim; (2) the probability that fraudulent conduct has occurred or will occur to frustrate that claim; (3) whether there is an imminent danger that the property will be concealed, lost, or diminished in value; (4) the inadequacy of legal remedies; (5) the lack of a less drastic equitable remedy; and (6) the likelihood that appointing the receiver will do more good than harm. *Santibanez v. Wier McMahon & Co.*, 105 F.3d 234, 241–42 (5th Cir. 1997). In addition, courts may consider whether an agreement between the parties contemplates a receivership, and the existence of a contractual receivership clause will be accorded great weight. *Cadence Bank*, 2013 WL 2151743, at *3.

In this case, appointment of a receiver is warranted. To begin, it appears that PNC has valid claims, as Shan Motel concedes in its Amended Response that it is in default under the loan documents and that PNC is entitled to a judgment of foreclosure. Doc. 61 ¶ 10. In addition, PNC has presented substantial evidence that the Motel Property is in a state of disrepair, that many of the motel rooms are unrentable, and that significant work must be done to maintain the property. *See* Doc. 39, Exs. 1–3. Although Shan Motel disputes these characterizations, it has failed to present any evidence to the contrary. *See* Doc. 61. As such, PNC has demonstrated that there is an imminent danger that the Motel Property will be diminished in value if a receiver is not appointed. Shan Motel has also failed to present a more appropriate legal or equitable remedy. Indeed, PNC has demonstrated that the market value of the Motel Property is less than Shan Motel's indebtedness under the loan documents, and therefore a foreclosure sale of the property alone will not be sufficient to cover the debt. *See* Doc. 39 at 2. Although Shan Motel contends that the cost of the receiver will outweigh the amount of any revenues generated by the motel, *see* Doc. 61 ¶ 6, it has failed to provide any support for this assertion. Finally, the Court finds it pertinent that the mortgage documents expressly provide for the appointment of a receiver, and that the conditions for such appointment appear to have been satisfied. *See* Doc. 1-1 at 13–14.

For the foregoing reasons, the Court finds that PNC is entitled to the appointment of a receiver for the Motel Property. However, the Court does not agree that the receiver should be given the authority to market and sell the property. Such powers would be inappropriate given the pendency of the foreclosure proceedings. Accordingly, PNC's Motion will be granted in part.

Accordingly, it is hereby **ORDERED:**

1. Plaintiff's Verified Motion for Appointment of Receiver (Doc. 39) is **GRANTED in part**.

2.   <u>Appointment</u>.  Ketan B. Vora of Sunbelt Receivers, LLC ("Receiver"), be and the same is hereby appointed as Receiver for the motel currently operated as a Budgetel Inn, owned by Shan Motel Co. ("Borrower" or "Debtor"), located at 4104 West Vine Street, Kissimmee, Osceola County, Florida 34741 (the "Motel"), to preserve the Motel and ensure the continuity of operations at the Motel, if determined to be viable in the sole and absolute opinion of the Receiver.

3.   <u>Oath</u>.  Within FOURTEEN (14) DAYS of the date of this Order, the Receiver shall file with this Court an Oath of Receiver in the form attached hereto as Exhibit A.

4.   <u>Bond</u>.  Within FOURTEEN (14) DAYS of the date of this Order, the Receiver shall obtain and file with the Court, in the form attached hereto as Exhibit B, a surety bond in the amount of $10,000, which bond, in the event of this Order, shall automatically stand over and serve as the bond for the receivership of the Motel, guaranteeing performance by Receiver of the duties and obligations of his office of receivership, the bond to be payable to this Court in order to provide coverage to Plaintiff, Borrower, and other parties, as their respective interests may appear, for loss due to acts of all agents, servants, or employees or independent contractors of such Receiver.

5.   <u>Receiver's Entry on to Motel</u>.  The Receiver is hereby authorized and empowered to enter upon the Motel to operate, repair, manage, insure and otherwise maintain the Motel; to properly account for all income and expense of the Motel; to demand, collect, and receive all rents, revenues, issues, income, and profits (the term rent, revenue, issue, income, or profit used singularly anywhere in this Order shall mean rents, revenues, issue, income or profits collectively) generated from the operation

and otherwise attributable to the Motel now due, including past due, or hereafter to become due; and to perform and take all necessary actions in connection therewith.

6.  <u>Cooperation with Transition</u>.  Borrower, its representatives, managers, members, employees, and agents, specifically including but not limited to its management company, if any, shall fully cooperate with Receiver in effecting the prompt transition of the management of the Motel by making themselves reasonably available to assist the Receiver as requested.

7.  <u>Possession of Motel</u>.  The Receiver shall take possession of all the rents, revenues, issue, income, and profits, assets, files, papers, books and records, documents, franchise agreement(s), monies, deposit accounts, securities, choses in action, books of account, keys, electronic software and electronic data, including all passwords, usernames, licenses, insurance policies, emergency support and/or back up contact information and other information needed to access any computer program or software used at the Property or used in conjunction with the administration and/or security of the Property, all credit card transaction equipment, all warranties related to the Motel or equipment located thereon, all guest lists, reservations lists, rental agreements for space, kiosks, concessions at the Motel, all franchise agreements, and all other property, tangible and intangible, personal, or mixed, of the Borrower and/or Borrower's management company, which relate to or are necessary for the operation and/or ownership of the Motel and which are within the jurisdiction of this Court, and shall retain custody of all such property, records, and documents until further order of this Court.  All persons or corporations now or hereafter in possession of any part of the above-described

property are directed to forthwith surrender possession thereof to the Receiver, and such other persons or corporations as may lawfully be in possession of any portion of the Motel are directed to attorn to the Receiver and to pay over to the Receiver all rents, issues, income, and profits arising from occupancy of any portion of the Motel now due and unpaid, including past due, or that hereinafter become due until further order of this Court. All persons in possession of the books and records relating to the Motel, including, but not limited to, leases, books of account, general ledger, trial balance, check and cash register(s), bank statement(s), the Motel's federal, state, and sales tax return(s), insurance policies, insurance certificates, income records, deposit and/or prepayment records, vendor contracts, maintenance contracts, permits, licenses, Motel reservations information and/or systems, utility records and deposits, all records pertaining to use and occupancy, guest ledgers, reservation reports, operating statements, listing of all trade payables, a list of utilities and utility accounts, all onsite employee payroll records and employee files and applications, and any and all correspondence and documentation relating thereto, shall surrender possession to the Receiver. The Receiver shall take possession of the Motel and all books and records thereof forthwith. The Receiver is hereby authorized to employ agents, servants and employees and to contract as necessary for the purpose of taking possession of the Motel and managing the Motel, and is authorized to fire any existing employees at the Motel at the sole discretion of the Receiver. The Receiver is authorized to change any and all locks to the Motel and, if appropriate, to limit access to and/or shut down all or any portion of the Motel. The Receiver shall take possession of and receive from all

depositories, banks, and otherwise (collectively, the "Financial Institutions"), any money on deposit in all such Financial Institutions arising from the Borrower's operation of the Motel prior to the date of this Order. All Financial Institutions are directed to deliver such deposits to the Receiver and such records as the Receiver may reasonably request with respect to such accounts. All credit card processors shall deliver and remit to the Receiver any credit card remittances arising from the operation of the Motel. The Receiver is authorized to receive and endorse checks pertaining to the operation of the Motel either in the Receiver's name or in the Borrower's name. Borrower, or any franchisor(s), shall not withdraw or terminate any Franchise Agreement(s) unless authorized by this Court or the Receiver to do so.

8. <u>No Interference</u>. During the pendency of this action, Plaintiff and Borrower, and their successors and assigns and all persons or corporations having a claim by, through, under or against Borrower, their agents and attorneys be and the same are hereby enjoined and restrained from collecting, or attempting to collect, the rents, profits, or issues from the Motel and from interfering in any manner with the management of the Motel, or its possession or operation by the Receiver.

9. <u>Receiver's Powers</u>. The Receiver hereby appointed shall have and is hereby given the usual, necessary and incidental powers of receiver for the purposes of managing, securing, and maintaining the Motel, including marketing, advertising and renting rooms, concession areas, units, and making repairs to the Motel. The Receiver may engage the services of Sunbelt Receivers, LLC in its capacity as a management company, which is owned in part by him, or any other management

company and/or person to serve as the manager of the Motel, and to hire such employees, as in the Receiver's judgment are necessary to operate, manage, secure, protect and maintain the Motel and to fire any existing employees of the Motel Property at the sole discretion of the Receiver. The Receiver or any party hereto, on notice to all parties who have appeared in this action, may apply at any time to this Court for further and other instructions, and for further power necessary to enable the Receiver to properly fulfill his duties.

10. <u>Specific Duties of Receiver</u>. The Receiver shall operate, manage, secure, protect and maintain the Motel in a reasonable, prudent, diligent and efficient manner. Without limitation of that general duty, the Receiver shall have the following specific duties:

(a) <u>Operation and Management</u>. The Receiver shall use his best efforts to operate and manage the Motel, and to rent all available rooms, space, or units in the Motel at competitive rates, handle guests and their personal property, as provided by law, including without limitation, breaches of the conditions of their reservations, occupancy, or other agreements.

(b) <u>Maintenance, Security, Protection and Repair</u>. The Receiver shall provide appropriate security and protection for the Motel. The Receiver shall maintain and repair the Motel in accordance with reasonable commercial standards, including, without limitation, interior and exterior cleaning, painting and decorating, plumbing, carpentry, maintenance of air conditioners, and such other normal maintenance and repair work as may

be appropriate. The Receiver shall seek approval from the Court for any maintenance or repair that will cost over $10,000.

(c) <u>Insurance</u>. The Receiver shall replace or maintain current appropriate property insurance for the Motel, including public liability insurance, fire and extended coverage insurance, and burglary and theft insurance, and shall be authorized to add other insurance coverage as the Receiver deems necessary including, but not limited to Employers' Professional Liability Insurance ("EPLI") coverage. The Receiver shall promptly investigate and file a full, prompt written report with the Clerk of this Court as to all serious and material accidents, claims for damage relating to the ownership, operation and maintenance of the Motel, and the estimated cost of repair thereof, and shall prepare any and all reports required by any insurance company in connection therewith. The Receiver shall have the right to be named as an additional insured on such insurance policies for the Motel.

(d) <u>Operating Account</u>. Effective immediately upon entry of this Order, the Receiver shall establish and maintain, at a bank whose deposits are insured by the Federal Deposit Insurance Corporation ("FDIC"), a separate operating account for the Motel (the "Operating Account"), into which the Receiver shall deposit all receipts from the Motel. The Receiver shall make disbursements from such account to pay the expenses for that respective Motel Property from the receipts obtained from that particular Motel Property, as follows:

(i) Ordinary and necessary operating expenses, including, but not limited to, current monthly assessments, utilities, insurance premiums, salaries, payroll, and routine repair and maintenance expenses, including such vendor contracts and equipment leases that the Receiver determines to be commercially reasonable, arms-length transactions.

(ii) The reasonable costs and expenses of repairs.

(iii) Payment of current sales taxes.

(iv) Payment of current tourist development taxes.

(e) <u>Records</u>.  The Receiver shall maintain a separate comprehensive system of office records, and books and accounts concerning the operation of the Motel.  Upon reasonable notice, and at all reasonable times, Plaintiff and Borrower, and their respective agents and other representatives, shall have reasonable access to such records, accounts and books and to all vouchers, files, and all other materials pertaining to the operation of the Motel, all of which the Receiver agrees to keep safe, available and separate from any records not having to do with the operation of the Motel.

(f) <u>Legal Requirements</u>.  The Receiver shall use his best efforts to ensure that all aspects of the Motel and its operation and management comply with any and all laws, regulations, orders or requirements affecting the Motel issued by any federal, state, county or municipal authority having jurisdiction thereover.  The Receiver may continue to utilize and operate the Motel under all existing municipal, state, or governmental licenses, permits,

inspections, or other governmental approvals ("Licenses") that may be required for operation of the Motel, or initiate steps to transfer any or all of such Licenses into the name of the Receiver or the management company retained by the Receiver.

(g) Repairs and Improvements. The Receiver shall not incur any obligation for repairs or alterations to the Motel Property requiring expenditures in excess of $10,000.00 without prior order of this Court. The Receiver shall not incur obligations for improvements or additions to the Motel without prior order of this Court.

(h) Use and Maintenance of Premises. The Receiver shall not permit the willful use of the Motel for any purpose which will or might knowingly void any required policy of insurance or which might render any loss thereunder uncollectible, or which would be in violation of any law or government restriction.

(i) Service Contract. The Receiver shall not enter into any service contracts affecting the Motel that cannot be cancelled on 30 days' notice or that provides for a total compensation of more than $10,000.00, except with prior order of this Court. The Receiver shall disclose any affiliation or relationship with, or pecuniary interest that he may have with or in, such contracting party.

(j) No Waste. The Receiver shall not suffer, cause or permit any waste of the Motel or any of the components thereof.

11. <u>Inventory</u>.  The Receiver shall prepare and file with this Court within TWENTY-FIVE (25) DAYS of this Order, under oath, a reasonably full and detailed inventory of furniture, fixtures, and equipment based on typical furnishings in each room and any significant inventory items, of all parts of the Motel of which the Receiver has been given custody.

12. <u>Monthly Reports</u>.  The Receiver is directed to prepare and file with this Court on the 25th day of each month, so long as the Motel shall remain in his possession or care, a full and complete, separate report for the Motel, under oath, setting forth all receipts and disbursements, reporting all changes in assets in his charge or claims against the assets that have occurred during the prior calendar month.  The Receiver is directed to serve a copy of each report on the attorneys of record for Plaintiff and for Borrower.

13. <u>Net Cash Flow</u>.  On a monthly basis while this Order is in effect, the Receiver shall place any and all net cash flow available from operation of the Motel, after reasonable reserve for payment of future operating expenses, into a bank account insured by the FDIC to be held by the Receiver pending disbursement pursuant to further Court order.  In the event the net cash flow in such bank account exceeds the limits insured by the FDIC, the Receiver shall place such excess net cash flow into additional bank account(s) as required to ensure that all net cash flow available from operation of the Motel remains insured by the FDIC.

14. <u>Advances from Plaintiff</u>.  If the income from operation of the Motel is insufficient to pay the repairs, taxes, or other operating expenses for such property, the Receiver is hereby authorized during the term of his receivership to apply to the

Plaintiff, who may, at its sole election, advance such funds as Plaintiff deems necessary to operate or preserve the Motel without further order of this Court. Such advances will bear interest at the statutory rate from the date the advance is made until paid and shall constitute an allowable advance under the terms of the Mortgages for preservation of the security. In the event of such an advance, the Receiver shall issue his Certificate of Indebtedness in the form attached hereto as Exhibit C ("Certificate") to evidence such borrowings. A copy of each Certificate issued by the Receiver shall be filed with this Court upon issuance by the Receiver. The principal and interest evidenced by each such Certificate shall be a first and prior perfected lien and security interest upon the Motel, and upon all rents, earnings and income of the Motel. The lien of each Certificate shall be prior and superior to the rights, titles and interests in the Motel of all parties to this action, as well as to the lien of the Mortgage and other loan documents for which foreclosure is sought in this action and the Note and other obligations secured thereby. The lien of each Certificate shall be prior and superior to the interest or lien of all judgment holders, mechanics' lien claimants and shareholders, and creditors of Shan Motel, without limitation of the foregoing, the sums evidenced by each Certificate shall also be secured by the lien and security interests of the Mortgage. Nothing contained herein shall obligate Plaintiff to advance all or any part of the borrowings authorized herein. The Receiver shall not be obligated to contribute personal funds in the performance of his duties hereunder.

15. <u>Receiver's Fees</u>.   Until further order of this Court, the Receiver shall be compensated at the rate of $225 per hour, plus the reasonable and necessary out-of-

pocket expenses incurred by the Receiver on behalf of the Motel, excluding travel, lodging and meal expenses. It is also anticipated that certain employees of the Receiver will perform additional work during the period of receivership at lower hourly rates. Any charges, expenses or fees incurred by the Receiver in connection with his duties hereunder may be paid from the operating revenues of the Motel or from the proceeds of Receiver's Certificates as set forth above.

16. <u>Management Fees</u>. Sunbelt Receivers, LLC, in its capacity as manager of the Motel, shall be compensated at a management fee not to exceed 5% of the gross revenue of the Motel Property. Receiver has the right to replace the management company in its sole discretion.

17. <u>Suits Against Receiver/ Limitation of Liability</u>. No person or entity may file suit against the Receiver, in his capacity as Receiver, or against the Receiver's property manager, unless first authorized in advance by the Court. The Receiver and those agents, contractors and property managers working under the Receiver's control have no personal liability in connection with any obligations owed by the Borrower to its creditors, and the Receiver and those agents and any property manager acting under its control shall have no personal liability in connection with their conduct in the course of this receivership, except for claims due to their gross negligence, gross or willful misconduct, malicious acts, and/or failures to comply with the orders of this Court. Further, the Receiver shall not be responsible for any unpaid obligations incurred to third parties as a result of its operation and management of the Motel Property during the period of receivership. Neither Plaintiff nor the Receiver shall be liable for any obligations of Borrower relating to

the Motel Property that arose prior to the date of this Order, including, without limitation, any contingent or unliquidated obligations, nor shall Plaintiff or the Receiver be obligated to advance any funds to pay any expense of maintenance or other liability of the Motel for any period prior to or after the date of this Order.

18. <u>Counsel</u>.  The Receiver is hereby empowered to employ independent legal counsel, to furnish legal advice to the Receiver for such purposes as may be necessary during the period of receivership, and any reasonable fees and costs for such legal advice or action by legal counsel shall be deemed proper expenses of the Receiver under this Order.

19. <u>Other professionals</u>.  The Receiver is also authorized to engage other professionals as deemed necessary by the Receiver, including but not limited to an accounting firm for accounting services the Receiver deems reasonably necessary to assist in the performance of the Receiver's duties during the period of receivership.  Amounts due to Receiver, its legal counsel, accountants and other professionals shall be paid from the income and receipts the Receiver administers in this case, but if those funds are insufficient, then these amounts due shall be paid directly by Plaintiff in accordance with paragraph 14 above.

20. <u>Taxes</u>.  The Receiver shall be under no obligation to complete or file tax returns or pay any amounts on behalf of the Borrower or relating to the Motel or the operation thereof for income or other taxes arising on or before this Order.  The Receiver is not obligated to pay any real estate taxes on behalf of the Borrower.  To enable the Borrower to file its income tax returns, the Receiver shall provide to

Borrower or Borrower's accountant the receipts and disbursement activities during the period of this Receivership.

21. The Receiver is authorized but not obligated to:

(a) reject the executory portion of any contract, commitment, lease, understanding or obligation of any kind presently in force between Borrower and any other party;

(b) rent or re-rent rooms, issue, extend, re-negotiate, modify, amend, execute and renew leases, vendor contracts, or agreements for the use of the Motel;

(c) pursue all actions and proceedings against guests for breaches or violation of their reservation, occupancy, or other agreements and/or non-payment or breach of any terms and conditions of existing agreements at the Motel;

(d) pursue eviction proceedings against concessionaires, lessees or other occupants of space at the Motel for violation or breach of any terms and conditions of their agreements, licenses, or leases at the Motel;

(e) engage, obtain and arrange for payment of any testing, appraisal, surveying, engineering or environmental consulting services the Receiver deems reasonably necessary;

(f) conduct any and all investigations of and discovery from any person or entity, including any officer, principal or employee of Borrower, as the Receiver, in its sole discretion, deems reasonably necessary; provided, however, the Receiver is not required to further investigate or prosecute any

claim, cause, allegation or interest asserted by other parties, or any claim, cause, allegation or interest for the benefit of Borrower; nor is the Receiver required to commence, defend, compromise, settle or otherwise administer and deal with litigation, including, but not limited to, recovery of rent, fees, income, expenses and profits relating to the Motel, on Borrower's behalf or against Borrower; provided, however, that the Receiver is not obligated to defend any claim or action on Borrower's behalf or to prevent the entry of judgment against Borrower, and need enter defenses or litigate any claims against Borrower only to the extent the Receiver deems reasonably necessary to protect the Motel and its associated assets;

(g) commence, defend, compromise, settle or otherwise administer and deal with litigation, including, but not limited to, recovery of rent, fees, income, expenses and profits relating to the Motel; and

(h) apply to this Court for further or other instructions and for further power necessary to enable him to properly fulfill his duties as Receiver.

22. <u>Borrower Must Comply; Prior Expenses for Property</u>.  Borrower, its principals, representatives, employees, members, managers, and agents are enjoined from obstructing or interfering with (i) the Receiver's full and unfettered access to the Motel or (ii) the Receiver's efforts to receive, collect and administer income and materials associated with the Receivership Property.  Borrower is also enjoined from retaining, taking possession of, exercising control over, assigning, or conveying any asset, right, privilege, or interest regarding Borrower, the Motel or rights and privileges associated with the Motel.  The Receiver shall not be

responsible for any unpaid obligations incurred to third parties as a result of his operation and management of the Motel during this period. Except for expenses incurred by the Receiver prior to the entry of this Order in connection with the appointment of the Receiver or the entry of this Order, neither the Receiver nor Plaintiff shall be liable for any expenses incurred with regard to the Property incurred prior to the Receiver taking possession of the Property (including, without limitation, real property taxes, sales tax, utility bills, mechanic's liens, franchise fees, federal and state tax liens, construction contracts, unpaid payroll expenses or other unpaid invoices for services, materials labor or utilities incurred by Borrower or for the benefit of the Motel Property), nor shall the Receiver or Plaintiff be required to use any rents, revenues, issues, income, profits, or other revenues collected after the Receiver takes possession of the Property for payment of any such expenses incurred with regard to the Property prior to the Receiver's taking possession of the Property. Notwithstanding the foregoing, the Receiver may, in the Receiver's sole and absolute discretion, pay those expenses which were incurred in the normal and ordinary course of business of the Property and which were incurred prior to the Receiver taking possession of the Property, if, and only if, the payment of any such pre-existing expenses is necessary and critical to the ongoing operation of the Property (e.g., utilities, delinquent sales taxes, food and alcoholic beverage vendors, if any, linen suppliers, and the like).

23. <u>Receiver as Officer of the Court</u>. The Receiver shall serve in the capacity of a court-appointed receiver and is immune from claims, liabilities, or lawsuits, whether in contract or in tort, arising from the performance of duties authorized by

this Order. The Court retains jurisdiction over this matter as necessary to enforce the powers of the Receiver and/or to compel a performance of and compliance with this Order. The Receiver is authorized, upon application to this Court, to seek further enforcement and relief as necessary.

24. <u>Receiver's Notice to Tenants</u>. Promptly after his appointment, the Receiver shall send a letter to any licensees, concessionaires, tenants or occupants at the Motel notifying them of the change of address for the Receiver for purposes of remitting rent payments to the Receiver.

25. <u>Duration of Receivership</u>. The Receivership shall continue in place until a Marshal's Deed for the Motel has been issued in this action and the holder of the Marshal's Deed has been let into possession of the Motel or upon order of this Court discharging the Receiver. Thereafter, the Receivership and the Receiver's Bond shall be dissolved upon appropriate motion and/or hearing, but in no event shall the dissolution occur less than ninety (90) days after the issuance of the Marshal's Deed or order of discharge.

**DONE** and **ORDERED** in Orlando, Florida on June 30, 2014.

*Charlene Edwards Honeywell*

Charlene Edwards Honeywell
United States District Judge

Copies furnished to:

Counsel of Record
Unrepresented Parties